**FILED**
**Dec 06, 2022**
**07:00 AM(CT)**
**TENNESSEE COURT OF WORKERS' COMPENSATION CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| Jennifer Lackey, **Employee,** | ) ) ) | Docket No. 2019-06-1006 |
| v. | ) | State File No. 78037-2017 |
| Gaylord Opryland Hotel/Marriott International, **Self-insured Employer.** | ) ) ) ) | Judge Kenneth M. Switzer |

---

## EXPEDITED HEARING ORDER

---

On December 1, 2022, the Court held a second expedited hearing seeking treatment of Jennifer Lackey's alleged breast injury. Marriott International did not dispute that she fell on the job but contested the work-relatedness of her breast condition. The parties offered differing medical opinions. Marriott's expert's opinion—that her injury did not arise primarily out of employment—is presumed correct. Therefore, the Court cannot order treatment at this time because Ms. Lackey has not offered sufficient evidence to overcome that presumption.

### Claim History

Ms. Lackey worked as a bartender/cocktail waitress for Marriott. On January 20, 2017, she fell at work and claimed injuries to her lip, teeth, knee, and breast. Marriott accepted the claim except for the alleged breast injury.

Before the accident, Ms. Lackey underwent a double mastectomy and reconstructive surgeries. She testified that the reconstruction needed to be redone, which procedure took place in September 2016. Her surgeon, Dr. Stephen Davis, saw her afterward in December 2016. A note from that visit says, "Shape and contour of the breasts are quite good and she is having no issues." Ms. Lackey argued that the surgery had been successful until the fall at work damaged and dislocated the implant.

1

Dr. Chae Ko, who saw Ms. Lackey at an urgent care clinic after the injury, noted, "Examination of the left chest demonstrates slight lateral tilting of the left breast with lateral dimpling. Mild palpable defect on the lateral left breast compared to the contralateral side." Among her other injuries, Dr. Ko diagnosed "[b]reast reconstruction disproportion" and referred her to a plastic surgeon.

Ms. Lackey chose Dr. Davis from a panel. Dr. Davis was added on her request, although multiple notations within his records suggest that he does not treat workers' compensation patients.

Regardless, Ms. Lackey saw him in February 2017, where he noted that she fell at work but wrote:

> The implants are sitting in a good location. The implant chest wall interface (left and right) are well positioned and very stable and solid. I feel no enlarging within the capsules themselves and the irregularities of the breasts are present and were present before as a result of the previous surgeries and issues that she had.

Dr. Davis concluded she could return to see him as needed.

A year later, Ms. Lackey followed up. She again said the fall at work injured her breast, resulting in "creasing" and "some distortion." Dr. Davis wrote that from reviewing the operative report, the right implant used a cellular dermal matrix, but the left did not. On exam, Dr. Davis noted "good quality skin on the left side" but also "a paucity of subcutaneous tissue." He ordered an MRI.

At the next visit in April, Dr. Davis wrote, "She believes the implant has shifted medially towards the sternum, and there are visual appearance issues associated with it. I've told her, I cannot be 100% sure, or comfortable, with the fact that falling caused all of this to occur." Instead, he suggested that the mastectomies, the thinness of her skin, and the multiple procedures might be responsible.

Later that month, Marriott's adjuster sent Dr. Davis a letter asking:

> Can you state within a reasonable degree of medical certainty whether the implant shift and thinning around the implant that could require surgery that includes fat grafting, moving the implant laterally, a cellular derma matrix and capsulectomy work, primarily arose out of (i.e., more than 50%) her alleged injury on January 20, 2017 at Gaylord Opryland?

He checked "no." Marriott denied the claim afterward.

2

In 2020, Ms. Lackey moved to North Carolina and began treating with Dr. Malcolm Marks. He first saw her in June, and after an examination he wrote, "Very distorted implant left first noted after fall which amongst report of other injuries bruised her left chest wall[.] Left breast distortion may be related to fall on breast with either partial capsulectomy and herniation implant in areas or resolved hematoma with distortion." The notes from this visit do not mention whether Dr. Marks reviewed Ms. Lackey's past treatment records or results from the MRI that Dr. Davis had ordered.

Ms. Lackey requested a hearing seeking treatment for her breast, which the Court held in August 2020. After weighing the evidence, the Court held that Dr. Marks's opinion did not overcome the presumption of correctness that attached to Dr. Davis's opinion.

Afterward, Ms. Lackey continued treating with Dr. Marks and now offers additional proof. In particular, she introduced records from a February 2022 visit with him, where Dr. Marks wrote:

> I have reviewed photos of breasts taken before and after the fall [that] struck her left breast[.] . . . I did not see breasts prior to fall but by history it is reasonable to assume that the direct blow to the breast could be responsible for more than 50% of the observed deformity left breast [sic].

For its part, Marriott recently asked Dr. Davis to offer an updated causation opinion after reading Dr. Marks's records.

In a September 27, 2022 letter, Dr. Davis wrote that at the first post-injury visit in February 2017, the "implant-chest wall interface (left and right) are well -positioned and very stable and solid. There was no enlargement within the capsules. The irregularities of the breasts that were present were the same as before her previous surgeries." Dr. Davis ordered an MRI that revealed "intact sub-pectoral silicone implants without evidence of intra-capsular or extra-capsular rupture." At her last visit in April 2018, he noted that Ms. Lackey said the left breast implant had shifted in appearance. In response, Dr. Davis "commented that [he] could not be sure this was related to her fall, rather it was mostly [sic] likely related to the thinning of the tissues from her mastectomies."

Ms. Lackey argued that Dr. Ko observed and documented dimpling and a lateral defect in her breast before referring her to a specialist. She further contended that Dr. Davis gave his opinion because he did not want to treat her under workers' compensation.

**Findings of Fact and Conclusions of Law**

At an expedited hearing, Ms. Lackey must present sufficient evidence that she is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Specifically, she must show that her breast condition arose primarily out of her employment. She must show "to a reasonable degree of medical certainty, that [the employment] contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(12)(C) (2022). Further, "'shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." *Id.* at -102(12)(D).

Here, Dr. Davis performed the most recent reconstruction in 2016 and had the advantage of following her condition until 2018, while Dr. Marks began treatment in 2020, four years after the surgeries and three years after the fall at work.

In his September 2022 letter, Dr Davis noted not long after the fall in 2017 that the implants were "well positioned and very stable and solid" and that "[t]he irregularities of the breasts that were present were the same as before her previous surgeries." The later MRI showed intact implants with no ruptures. Then at her last visit in April 2018, he reiterated that the left-breast implant shift was likely not related to her fall but "was mostly [sic] likely related to the thinning of the tissues from her mastectomies."

Dr. Davis's findings are unambiguous: he believes the condition of Ms. Lackey's left breast is *not* related to the work accident. He reviewed the MRI results and apparently considered all potential causes, including the thinning of tissues after the previous surgeries. His explanation is detailed and thorough. Although Ms. Lackey questioned the reliability of Dr. Davis's opinions, given that he is disinclined to take workers' compensation, the fact remains that he *did* accept her as a workers' compensation patient. The Court finds no reason to doubt his credibility on that basis.

Most important to the Court's analysis is the difference in the language that the physicians used to give their opinions. Dr. Davis was asked in the causation letter if he could "state within a reasonable degree of medical certainty whether the implant shift and thinning around the implant . . . primarily arose out of (i.e., more than 50%) her alleged injury" at work. His response was no. This verbiage closely mirrors the statutory definition of "injury." Dr. Davis's opinion as the physician chosen from a panel is presumed correct. Tenn. Code Ann. § 50-6-102(12)(E).

In contrast, Dr. Marks concluded, "It is reasonable to assume that the direct blow to the breast *could be* responsible for more than 50% of the observed deformity left breast [sic]." (Emphasis added). His statement that the work accident "*could be* responsible" suggests a degree of speculation that does not conform with the level of certainty that the statute requires. Moreover, the Appeals Board has held that an employee cannot "prevail on the issue of medical causation if a medical expert testifies that a work accident 'could

4

be' the cause of a medical condition." *Miller v. Lowe's Home Centers, Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *10 (Oct. 21, 2015).

Ms. Lackey contended that Dr. Ko observed post-accident dimpling and a defect. The Court is unpersuaded that this supports her position. While that is an accurate recitation of the records from that visit, Dr. Ko is not a specialist, and more importantly, he did not give an opinion as to whether those conditions resulted from the work accident or another cause.

Finally, Ms. Lackey once again offered credible, sincere testimony and a declaration about how she became injured, Marriott's response to her injury, and the devastating effects the injury has had upon her life for the last five and one-half years. But she did not offer a C-32 from Dr. Marks or other medical proof supporting that her current condition is work-related.

On this record, she has not shown that she is likely to prevail at a hearing on the merits that her breast injury arose primarily out of employment. The Court cannot order the relief she seeks.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Lackey's request for treatment for her breast is denied.

2. This case is set for a status hearing on **February 27, 2023, at 10:00 a.m. Central Time.** The parties must call 615-532-9552 or 866-943-0025.

**ENTERED December 6, 2022.**

*Kenneth M. Switzer*
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

EXHIBITS:
1. Affidavit of Jennifer Lackey, September 7, 2022
2. Notice of Denial
3. Declaration of Brian Callan (No attachments)
4. Dr. Marks's medical records
5. Dr. Davis's medical records
6. Emergency room and Concentra records
7. Dr. Davis's note, November 2016

5

TECHNICAL RECORD:
1. Petition for Benefit Determination
2. Dispute Certification Notice and Marriott's additional issues
3. Request for Expedited Hearing
4. Order on Show Cause Hearing
5. Order Setting Status Conference
6. Order Setting Expedited Hearing
7. Expedited Hearing Order
8. Order Setting Status Hearing, October 9, 2020
9. Order Resetting Status Hearing, December 8, 2020
10. Order Resetting Status Hearing, April 6, 2021
11. Order Resetting Status Hearing, July 21, 2021
12. Order Resetting Status Hearing, February 28, 2022
13. Order Resetting Status Hearing, May 23, 2022
14. Order Resetting Status Hearing, August 2, 2022
15. Hearing Request
16. Order Setting Expedited Hearing
17. Employer's Expedited Hearing Position Statement
18. Employer's Witness and Exhibit List

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on December 6, 2022.

| Name | Certified Mail | Regular mail | Email | Sent to |
|---|---|---|---|---|
| Jennifer Lackey, self-represented employee | | | X | Flamingogrove2018@gmail.com |
| David Goudie, Ford Matthews, Nick Akins, employer's attorneys | | | X | dgoudie@morganakins.com nakins@morganakins.com fmatthews@morganakins.com plunny@morganakins.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*